1  JOSH KREVITT (SBN 208552)
2      jkrevitt@gibsondunn.com
   **GIBSON, DUNN & CRUTCHER LLP**
3  200 Park Avenue
   New York, NY 10166-0193
4  Telephone:  212.351.4000
   Facsimile:   212.351.4035
5

6  Attorney for Dell Inc. and Dell Technologies Inc.

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11 In re Subpoena to                          Misc. Case No. 3:25-mc-80064

12 QUINN EMANUEL URQUHART &
   SULLIVAN, LLP                              [E.D. Tex. Case No. 2:24-cv-637-JRG]

13
   Out of District Case:
14                                            **NOTICE OF MOTION AND
   CLOUD BYTE LLC,                            MEMORANDUM OF POINTS AND
15                                            AUTHORITIES IN SUPPORT OF
                Plaintiff,                    MOTION TO ENFORCE SUBPOENA
16                                            DUCES TECUM**
        v.
17                                            Motion Hearing:
   DELL INC. and                                Date: TBD
18 DELL TECHNOLOGIES INC.,                      Time: TBD
                                                Crtm: TBD
19              Defendants.                      Judge: TBD

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2     **PLEASE TAKE NOTICE** that, at a time and before a judge to be determined by

3  the Clerk of the United States District Court for the Northern District of California, Dell

4  Inc. and Dell Technologies Inc. (collectively, "Dell") will, and hereby do, move the

5  Court for an order pursuant to Federal Rule of Civil Procedure 45 ordering Quinn

6  Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") to comply with the subpoena

7  *duces tecum* served by Dell on January 29, 2025.

8     This Motion is made pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i),

9  which provides that "[a]t any time, on notice to the commanded person, the serving party

10  may move the court for the district where compliance is required for an order compelling

11  production or inspection."  Quinn Emanuel's objections to Dell's subpoena are meritless

12  and contrary to law.  Quinn Emanuel has failed to show any valid privilege, protection,

13  or undue burden that would justify withholding or limiting the production of documents

14  and information that are relevant, material, and necessary to Dell's defense of the

15  underlying patent infringement action in the Eastern District of Texas.  Quinn Emanuel's

16  objections are nothing but a pretext to obstruct and delay Dell's discovery of the true

17  facts and circumstances surrounding the ownership, transfer, and assertion of the

18  asserted patents.

19     This motion is based on the accompanying Memorandum of Points and

20  authorities, the Declaration of Paul Torchia and exhibits thereto, the proposed order

21  submitted herewith, such other evidence and argument as may be presented at or before

22  any hearing on this motion, and all matters of which the Court may take judicial notice.

23

24

25

26

27

28

1    Dated:  March 13, 2025                **GIBSON, DUNN & CRUTCHER LLP**

2                                          BY:  */s/ Josh Krevitt*

3                                                  Josh Krevitt

4                                          JOSH KREVITT (SBN 208552)
                                                jkrevitt@gibsondunn.com
5                                          GIBSON, DUNN & CRUTCHER LLP
                                           200 Park Avenue
6                                          New York, NY 10166-0193
                                           Telephone:  212.351.4000
7                                          Facsimile:   212.351.4035

8
                                           Attorney for Dell Inc. and
9                                          Dell Technologies Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. Statement of Issues to Be Decided ...................................................................1

II. Introduction ....................................................................................................1

III. Background......................................................................................................2

    A. NEC, IP Wave, and Cloud Byte ................................................................2

    B. ████████████████████ ..............................................3

    C. Dell's Attempts to Obtain Discovery from Cloud Byte ............................4

    D. Dell's Subpoena to Quinn Emanuel .........................................................5

    E. Dell's Continued Unsuccessful Efforts to Obtain Discovery from Cloud Byte, IP Wave, or NEC .................................................................7

IV. Jurisdictional Statement ..................................................................................8

V. Legal Standards ...............................................................................................8

VI. Argument .......................................................................................................10

    A. Quinn Emanuel Must Produce Agreements in Its Possession Between and Among Cloud Byte, IP Wave, and/or NEC .......................10

        1. Agreements Between or Among Cloud Byte, IP Wave, and NEC Are Relevant to Multiple Case Issues ................................10

        2. The Requested Documents Have Not Been Obtainable from Cloud Byte ................................................................................12

        3. ABA Rule 1.6 Does Not Prevent Production of These Documents ....................................................................................12

    B. Quinn Emanuel Must Produce License Agreements in Its Possession Relating to the Asserted Patents ..........................................14

        1. License Agreements Are Relevant to Damages, Marking, and Standing .................................................................................14

        2. Cloud Byte's Alleged Ignorance Necessitates Production from Quinn Emanuel ...........................................................15

    C. Quinn Emanuel Must Produce Communications in Its Possession Between or Among Cloud Byte, IP Wave, and NEC .............................16

        1. Communications Are Relevant to Damages, Marking, and Standing .................................................................................16

        2. Cloud Byte Has Failed to Produce Communications Made by Its Attorneys on Its Behalf .........................................................16

i

3.    Communications with NEC or IP Wave Are Not Privileged, and Any Privilege Would Have Been Waived ............................17

D.    Quinn Emanuel Must Produce Its Communications with Third Parties Relating to Cloud Byte, IP Wave, and/or NEC ...........................19

VII.    Conclusion.......................................................................................................19

DELL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE SUBPOENA – NO. 3:25-MC-80064

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014) ...........................................................................8

*Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*,
   No. 21-CV-0524, 2024 WL 3916100 (N.D. Cal. Aug. 23, 2024) ...........................9

*Axon Enter. Inc. v. Venjuris PC*,
   No. 6:22-MC-36-PGB-LHP, 2023 WL 1796436 (M.D. Fla. Feb. 7, 2023) ...........14

*Chartis Specialty Ins. Co. v. Scott Homes Multifamily Inc.*,
   No. CV-13-00601, 2015 WL 13566919 (D. Ariz. Feb. 23, 2015) .........................14

*Duarte v. St. Paul Fire & Marine Ins. Co.*,
   No. EP-14-CV-305, 2015 WL 7709433 (W.D. Tex. Sept. 25, 2015).....................12

*EEOC v. BDO USA, L.L.P.*,
   876 F.3d 690 (5th Cir. 2017)..........................................................................10, 18

*United States ex rel. Eichner v. Ocwen Loan Servicing LLC*,
   No. 4:19-CV-00524, 2024 WL 2922979 (E.D. Tex. June 10, 2024).......................9

*Ford Motor Co. v. Versata Software, Inc.*,
   316 F. Supp. 3d 925 (N.D. Tex. 2017) .................................................................13

*FTC v. Trudeau*,
   No. 03 C 3904, 2013 U.S. 2013 ............................................................................13

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006) ...........................................................................8

*Guardant Health, Inc. v. Pers. Genome Diagnostics, Inc.*,
   No. 19-MC-80131, 2019 WL 13243011 (N.D. Cal. July 22, 2019).......................9

*Hope for Fams. & Cmty. Serv. v. Warren*,
   No. 3:06-CV-1113, 2009 WL 174970 (M.D. Ala. Jan. 26, 2009)..........................13

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
   925 F.3d 1225 (Fed. Cir. 2019)......................................................................10, 11

*Lozada-Leoni v. MoneyGram Int'l, Inc.*,
    No. 4:20-CV-68, 2020 WL 10046089 (E.D. Tex. July 8, 2020) ..............................8

*Owens v. Republic of Sudan (In re Cooke Legal Grp., PLLC)*,
    333 F.R.D. 291 (D.D.C. 2019) ...................................................................13

*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*,
    No. 1:20-cv-00292, 2021 WL 602733 (M.D. Pa. Feb. 16, 2021)...........................13

*Sanofi-Aventis v. Sandoz, Inc.*,
    272 F.R.D. 391 (D.N.J. 2011) ...............................................9, 12, 18, 19

*In re Santa Fe Int'l Corp.*,
    272 F.3d 705 (5th Cir. 2001).................................................................18

*SEC v. Covington & Burling, LLP*,
    No. 23-mc-00002, 2023 WL 4706125 (D.D.C. July 24, 2023)..............................13

*Smith v. Devine (In re BK Racing, LLC)*,
    Nos. 18-30241, 20-03014, 2023 WL 3331563 (Bankr. W.D.N.C. May 9, 2023)....13

*Thompson v. Intermodal Cartage Co., LLC*,
    No. 2:24-CV-34-KS-MTP, 2025 WL 299971 (S.D. Miss. Jan. 24, 2025) ..........9, 18

*United States v. Servin*,
    721 F. App'x 156 (3d Cir. 2018)...........................................................13

*VirnetX, Inc. v. Microsoft Corp.*,
    No. 6:07 CV 80, 2008 WL 8894682 (E.D. Tex. June 4, 2008)................................9

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| Asserted Patents | U.S. Patent Nos. 7,739,544; 9,482,632; 9,560,177; 9,629,265; 9,651,320; 9,900,249; and 10,628,273 |
| Cloud Byte | Cloud Byte LLC, Plaintiff in the Underlying Action |
| Decl. | Declaration of Paul Torchia, dated March 13, 2025, submitted concurrently herewith |
| Dell | Dell Inc. and Dell Technologies Inc., Defendants in the Underlying Action |
| IP Wave | IP Wave Pte. Ltd. (Cloud Byte's direct predecessor-in-interest to the Asserted Patents) |
| NEC | NEC Corporation and NEC Asia Pacific Pte Ltd. (Cloud Byte's indirect predecessors-in-interest to the Asserted Patents) |
| Quinn Emanuel | Quinn Emanuel Urquhart & Sullivan, LLP |
| Underlying Action | *Cloud Byte LLC v. Dell Inc. et al.*, No. 2:24-cv-637-JRG (E.D. Tex.) |
| ███████ | ████████████████████████████ |

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Sale and Purchase Agreement for Patents and Patent Applications Between IP Wave Pte. Ltd. and Cloud Byte LLC (Mar. 5, 2024) |
| 2 | Plaintiff Cloud Byte LLC's Responses and Objections to Defendants Dell Inc. and Dell Technologies, Inc.'s First Set of Interrogatories (Nos. 1–12) (Jan. 2, 2025) |
| 3 | Correspondence between Dell's counsel and Quinn Emanuel |
| 4 | Correspondence between Dell's counsel and Quinn Emanuel |
| 5 | Subpoena *Duces Tecum* to Quinn Emanuel (Jan. 29, 2025) |
| 6 | Correspondence between Dell's counsel and Quinn Emanuel |
| 7 | Quinn Emanuel's Responses and Objections to Subpoena *Duces Tecum* (Feb. 12, 2025) |
| 8 | Correspondence between Dell's counsel and Quinn Emanuel |
| 9 | Subpoena *Duces Tecum* to NEC Corporation of America (Jan. 24, 2025) |

## I. STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should enforce Dell's January 29, 2025 subpoena *duces tecum* served on Quinn Emanuel by compelling Quinn Emanuel to produce (1) agreements between and among NEC, IP Wave, and Cloud Byte relating to the asserted patents; (2) license agreements for the asserted patents; (3) communications between and among NEC, IP Wave, and Cloud Byte relating to the asserted patents; and (4) communications sent by Quinn Emanuel on behalf of NEC, IP Wave, or Cloud Byte to third parties.

## II. INTRODUCTION

In the underlying district court litigation in the Eastern District of Texas, plaintiff Cloud Byte asserts infringement of seven U.S. patents originally assigned to NEC, a Japanese company. Rather than assert the patents directly against Dell, NEC passed the asserted patents to Cloud Byte, a shell patent assertion entity, through a Singaporean intermediary entity called IP Wave. This scheme was designed to shield NEC from U.S.-based discovery and hobble Dell's ability to get documents critical to its case. To that end, Cloud Byte has repeatedly stonewalled Dell in discovery by saying that it is not in possession of highly relevant information, and claiming that only NEC and IP Wave have the key documents and information about the patents.

Dell brings this motion to get the discovery that Cloud Byte should have turned over but has not yet. Both Cloud Byte and NEC—ostensibly unrelated entities—are represented by Quinn Emanuel Urquhart and Sullivan, LLP ("Quinn Emanuel") in relation to the asserted patents. Dell therefore subpoenaed Quinn Emanuel for highly relevant documents in its possession relating to the asserted patents. In particular, Dell seeks (1) agreements between and among NEC, IP Wave, and Cloud Byte relating to the asserted patents; (2) license agreements for the asserted patents; (3) communications between and among NEC, IP Wave, and Cloud Byte relating to the asserted patents; and (4) communications sent by Quinn Emanuel on behalf of NEC, IP Wave, or Cloud Byte to third parties.

Quinn Emanuel has no basis to oppose production of these documents. All of these documents are highly relevant to the issues in this case, including on threshold issues such as whether Cloud Byte has standing to bring an enforcement action against Dell in the first place. Quinn Emanuel's privilege objections are not well founded. The communications Dell seeks are either with third parties on issues such as licensing and valuation (and thus not privileged) or between Cloud Byte, IP Wave, and NEC (which Cloud Byte has represented are unrelated entities, and therefore their communications are not privileged either). Quinn Emanuel also objects to production based on ABA Rule 1.6. But Rule 1.6 allows production of a client's documents either with that client's consent (which Quinn Emanuel has not diligently sought from NEC) or in light of a court order. Because Quinn Emanuel's representation of NEC relates to the patents asserted now against Dell, and Cloud Byte (an entity set up by NEC to assert the patents) maintains that it does not have documents relevant to the asserted patents, the Court should order Quinn Emanuel to produce them under this case's strict protective order, mooting any objections under Rule 1.6.

Dell thus respectfully requests the Court compel Quinn Emanuel to produce the documents and information in its possession but allegedly not in Cloud Byte's control.

### III. BACKGROUND

#### A. NEC, IP Wave, and Cloud Byte

Cloud Byte, IP Wave, and NEC are closely related. The seven asserted patents in the underlying litigation in the Eastern District of Texas all originated with NEC. IP Wave was then created for the specific purpose of transferring NEC's patents to Cloud Byte, collecting litigation proceeds from Cloud Byte, and presumably transferring them back to NEC. Cloud Byte was formed as a vehicle to assert those patents. The only patents IP Wave has ever held or transferred are patents previously owned by NEC. Decl. ¶ 4. NEC transferred 179 patents and applications, including the asserted patents, to IP Wave on January 18, 2024. *Id.* ¶ 5. On February 21, 2024, NEC obtained a security interest in IP Wave. *Id.* ¶ 6. Cloud Byte was incorporated the following day ███

Cloud Byte touts that its portfolio is NEC's.  *See* https://cloudbytellc.com/ ("This patent portfolio was developed by a formidable multinational ICT company with over 100 years of experience . . . .").

**B.**

Despite an obligation in the Eastern District of Texas to produce all relevant information without waiting for discovery requests, Cloud Byte

Apart from public assignment documents, the sole document pertaining to the patents that Cloud Byte has produced is

3

1

2

3

4

5

6

7

8    **C.    Dell's Attempts to Obtain Discovery from Cloud Byte**

9         Because determining who has "all substantial" rights in the patent is a threshold

10   question necessary to assessing which party has standing to sue, Dell has sought

11   discovery to further evaluate NEC and IP Wave's rights and to understand prior

12   licensing of the asserted patents done by NEC or IP Wave.  But Cloud Byte has

13   stonewalled Dell at every turn.

14        On December 3, 2024, Dell served Cloud Byte with interrogatories covering

15   topics related to NEC's interests in and licensing of the asserted patents.  Cloud Byte

16   served objections and responses on January 2, 2025,

17                                                        . Ex. 2.  Cloud Byte

18

19        .  In response to Cloud Byte's insufficient discovery responses, Dell asked Cloud

20   Byte to produce,

21        agreements between NEC, IP Wave, and Cloud Byte relating to the asserted

22   patents.  Ex. 3.  Cloud Byte

23

24                                                        . *Id.*

25        On January 16, in light of Cloud Byte's

26

27        , Dell asked Cloud Byte whether its attorneys at Quinn Emanuel possessed

28   relevant documents or communications with NEC or IP Wave.  Ex. 4.  Dell explained

4

that, even if Cloud Byte would refuse to produce documents due to privilege, Dell needed to know whether Quinn Emanuel's possession or knowledge could explain ███████████████████████████████████████████████████████████████. *Id.* Dell noted that if Quinn Emanuel attorneys for Cloud Byte had received documents or made communications on Cloud Byte's behalf, those documents were in Cloud Byte's "control," regardless of whether they were physically located in Cloud Byte or Quinn Emanuel's files. *Id.* Dell further noted that Quinn Emanuel attorneys for Cloud Byte should also have discovered this information during a Rule 11 pre-suit investigation. *Id.*

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████

### D. Dell's Subpoena to Quinn Emanuel

On January 29, Dell served Quinn Emanuel with a subpoena *duces tecum*, ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
█████████████████████████.[1]   Ex. 5.   The subpoena included ten narrow document requests generally seeking documents in Quinn Emanuel's possession relating to the asserted patents, including agreements, licenses, valuations, and communications with third parties.

Quinn Emanuel initially sought a two-week extension to respond to the subpoena, which Dell agreed to on the condition that Quinn Emanuel produce a log for documents withheld on the basis of privilege on the return date. Ex. 6. Quinn Emanuel refused this offer and served its objections and responses on February 12, 2025, without a privilege log. Ex. 7. In its objections and responses, Quinn Emanuel ████████████████████
█████████████████████████████████

---

[1] Dell also served a subpoena *ad testificandum* on Quinn, which is the subject of Quinn Emanuel's Motion to Quash Out of District Subpoena, or in the Alternative, Transfer to the Eastern District of Texas (Misc. Case No. 3:25-mc-80048).

1

2                                                                          . *Id.*   For the majority of document

3    requests, Quinn Emanuel responded

4

5

6

7

8            The parties met and conferred regarding Quinn Emanuel's response to the

9    subpoena on February 25. Decl. ¶ 13. On the meet and confer, Quinn Emanuel asserted

10   for the first time that it could not produce documents from its representation of NEC

11   because the documents allegedly reflected NEC confidential information according to

12   American Bar Association Model Rule 1.6 and Opinion No. 473. *Id.*; Ex. 8. Although

13   ABA Model Rule 1.6 allows production of a client's confidential information with that

14   client's informed consent, and even though Quinn Emanuel had received the subpoena

15   nearly a month prior and these issues had been pending for over 10 weeks, Quinn

16   Emanuel had yet to even attempt to contact NEC to attempt to obtain its consent to

17   disclose the information. Ex. 8. On the meet and confer, Dell also requested Quinn

18   Emanuel identify which documents or communications it was withholding on this basis

19   and produce a privilege log, which would not be difficult due to the limited number of

20   documents at issue. *Id.*

21           Quinn Emanuel promised to attempt to contact NEC, but on March 3 Quinn

22   Emanuel stated that NEC did not respond to Quinn Emanuel's communications. *Id.* To

23   this date, Quinn Emanuel has not provided NEC's position on Dell's request for the

24   relevant documents to be produced. In its March 3 email, Quinn Emanuel also

25   contended that Rule 1.6 prevented it from even identifying whether it possessed any

26   relevant documents, and it continued to assert that relevant documents in its possession

27   were not necessarily in Cloud Byte's control. *Id.*

28

**E.    Dell's Continued Unsuccessful Efforts to Obtain Discovery from Cloud Byte, IP Wave, or NEC**

Concurrently with its attempts to obtain information from Quinn Emanuel through subpoena, Dell continued to seek the relevant information through party discovery from Cloud Byte.  Dell has been unable, however, to obtain *any* additional information because of Quinn Emanuel and Cloud Byte's position that documents in NEC's and Quinn Emanuel's possession are not in Cloud Byte's control.

For example, on March 3, Dell moved to compel Cloud Byte to produce an unredacted copy of ████████████████████████ and any licenses or agreements in NEC, IP Wave, or Quinn Emanuel's possession.  *See Cloud Byte LLC v. Dell Inc.*, No. 2:24-cv-00637-JRG (E.D. Tex.), Dkt. 59.  Dell has also been seeking information directly from NEC and IP Wave, but because NEC and IP Wave are foreign entities, Dell's options are slow, expensive, and ineffective.  Due to these entities' apparent financial interest in the litigation, they have every incentive to delay and refuse to produce discovery, and Dell has limited recourse to enforce its discovery requests in Singaporean and Japanese courts.  Dell attempted to obtain information in NEC's possession through NEC's American subsidiary, ██████████████████ ██████████████████████████████.  Ex. 9.  Ultimately, NEC and IP Wave are not reasonably available sources for the information Dell needs to support its defenses, including information regarding the threshold issue of whether Cloud Byte has standing to bring the case ██████████████████████ ██████████.

It is this confluence of obstruction and evasion that has necessitated Dell to take the step of moving to compel Quinn Emanuel to respond to the subpoena.  Dell does not make this request lightly, and Dell would prefer to use party discovery to obtain the information necessary to support its defenses.  Unfortunately, Cloud Byte, IP Wave, and NEC's corporate scheme and discovery obstruction have made clear that party discovery

7

1    from Cloud Byte will likely be inadequate to obtain the basic information supporting

2    Dell's standing and other defenses.

3                                **IV. JURISDICTIONAL STATEMENT**

4           The subpoena that is the subject of this motion was issued by the United States

5    District Court for the Eastern District of Texas and calls for documents to be produced

6    in San Francisco, California.  Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i),

7    "[a]t any time, on notice to the commanded person, the serving party may move the court

8    for the district where compliance is required for an order compelling production or

9    inspection."  This Court is in the district where compliance is required and therefore has

10   jurisdiction over the enforcement of the subject subpoena.[2]

11                                    **V. LEGAL STANDARDS**

12          The scope of discovery under Rule 45 subpoenas is governed by the same standard

13   as discovery under Rule 26.  *Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 4:20-CV-68,

14   2020 WL 10046089, at *7 (E.D. Tex. July 8, 2020).  Thus, a party may use a subpoena

15   to obtain "any nonprivileged matter that is relevant to any party's claim or defense and

16   proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  A court may limit

17   discovery if "the discovery sought" is "obtainable from some other source that is more

18   convenient, less burdensome, or less expensive" or if "the burden or expense of the

19   proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 45(c)(3)(A)(iv); Fed.

20   R. Civ. P. 26(b)(2)(C); *see also Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D.

21   Cal. 2006) ("[A] court determining the propriety of a subpoena balances the relevance

22   of the discovery sought, the requesting party's need, and the potential hardship to the

23   party subject to the subpoena.").

24          Although courts have recognized that Rule 45 subpoenas may risk "unwanted

25   burden thrust upon non-parties," *Amini Innovation Corp. v. McFerran Home*

26   ───────────────

27   [2] In its Motion to Quash Out of District Subpoena, or in the Alternative, Transfer to the
     Eastern District of Texas (Misc. Case No. 3:25-mc-80048), Quinn Emanuel moved to
     transfer pursuant to Rule 45(f) to the Eastern District of Texas where the underlying

28   litigation and related discovery motions are pending.  Dell does not oppose transfer of
     Quinn Emanuel's Motion to Quash or this motion to the Eastern District of Texas.

*Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014), courts have noted that an "interested non-party" may not "shelter[] under Rule 45" through "agreements or shell entities." *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07 CV 80, 2008 WL 8894682, at *7 (E.D. Tex. June 4, 2008). The court may use its equitable power to prevent this "gamesmanship" and "manipulation of [the court's] liberal discovery policies" from delaying production, "escalating an accused infringer's litigations costs, and withholding discoverable information." *Id.* ("Nor will this Court allow a non-party with a substantial economic interest in the lawsuit and substantial control over either the plaintiff or the rights to the patent-in-suit to shield, delay production of, or defray the costs of producing items the plaintiff would be obligated to produce under Rule 26 . . . ."). Similarly, a party may not "use its foreign affiliation with [an affiliate] as both a sword and a shield" to selectively reveal information for its benefit while preventing the disclosure of potentially harmful discovery. *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 396 (D.N.J. 2011).

If a respondent refuses to produce subpoenaed documents because of privilege, it "has the burden to show the privilege applies with particular and specific demonstrations of fact." *United States ex rel. Eichner v. Ocwen Loan Servicing LLC*, No. 4:19-CV-00524, 2024 WL 2922979, at *5 (E.D. Tex. June 10, 2024) (quotation omitted). Blanket or boilerplate assertions of privilege are insufficient. *Guardant Health, Inc. v. Pers. Genome Diagnostics, Inc.*, No. 19-MC-80131, 2019 WL 13243011, at *3 (N.D. Cal. July 22, 2019) ("Courts routinely express skepticism of blanket privilege arguments . . . ."). A respondent must—at a minimum—identify the specific documents it alleges to be privileged. *Id.*; *accord Thompson v. Intermodal Cartage Co., LLC*, No. 2:24-CV-34-KS-MTP, 2025 WL 299971, at *3 (S.D. Miss. Jan. 24, 2025) ("Without identifying the documents that are allegedly privileged, Defendants have not carried their burden.").

Thus, a respondent, including a non-party respondent, "must produce a privilege log when claiming that subpoenaed information is privileged." *Eichner*, 2024 WL 2922979, at *5 (citing Fed. R. Civ. P. 45(e)(2)). The failure to timely produce a log may

9

waive privilege. *See, e.g., Athletics Inv. Grp., LLC v. Schnitzer Steel Indus., Inc.*, No. 21-CV-0524, 2024 WL 3916100, at *4 (N.D. Cal. Aug. 23, 2024) ("[C]ourts have not hesitated to find waiver where a party repeatedly engages in inexcusable or unjustifiable conduct."); *accord EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (noting privilege may be waived when failure to produce log "results from unjustified delay, inexcusable conduct, or bad faith").

## VI. ARGUMENT

### A.    Quinn Emanuel Must Produce Agreements in Its Possession Between and Among Cloud Byte, IP Wave, and/or NEC

Quinn Emanuel must produce any agreement it possesses between IP Wave, NEC, or Cloud Byte, including any purchase and sale agreement between NEC and IP Wave, which are relevant to issues of standing and damages. ██████████████████

██████████████████████████████████████████████████

███    Dell therefore turned to Quinn Emanuel for these documents. Although Quinn Emanuel cannot credibly contend that these agreements are not relevant or that they would be overly burdensome to produce, it has refused to admit possession of these documents on the grounds that doing so would allegedly violate confidentiality duties to NEC, its former client, under ABA Rule 1.6. Quinn Emanuel's excuses for not producing these documents should be rejected.

#### 1.    Agreements Between or Among Cloud Byte, IP Wave, and NEC Are Relevant to Multiple Case Issues

The agreements between and among Cloud Byte, NEC, and IP Wave are crucial to numerous issues in the case—and Quinn Emanuel has never credibly suggested otherwise. First and foremost, these agreements are necessary to determine the threshold question of whether Cloud Byte even ████████ with standing to sue. They may also likely bear on issues of damages, such as value, licensing, and marking.

As the Federal Circuit has explained, when a prior owner retains the bulk of the rights in the patent, the transferee has no standing to sue in their own name. *See Lone*

*Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229, 1232, 1234 (Fed. Cir. 2019).   The substantive rights, not the terminology used to describe the transfer, determine who is the patentee.  *See id.* at 1230 (noting the analysis is not "reliant on labels").  Thus, if NEC or IP Wave retained substantial rights in the asserted patents, Cloud Byte would not be the "patentee" and would either need to join NEC or IP Wave as a Rule 19 required party or dismiss the case.

██████████████████████████████████████████████ there appear to be real issues of standing in this case.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

        Aside from standing, the agreements sought are relevant to several other issues in the case, including damages-related issues such as patent valuation, licensing, and marking.   The agreements may reveal whether any other parties are licensed to the

---

[3]   Cloud Byte unjustifiably redacted ███████████████████  Dell has moved to compel Cloud Byte to produce an unredacted version of ████████████.  *Cloud Byte LLC v. Dell Inc.*, No. 2:24-cv-00637-JRG (E.D. Tex.), Dkt. 59.

patents (and for how much), which could lead to other important discovery on whether there are marking and notice issues. Furthermore, the transfer prices and other monetary terms of any agreements are highly relevant to damages.

### 2. The Requested Documents Have Not Been Obtainable from Cloud Byte

In its objections and responses, ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Dell agrees that these documents *should* be obtainable from Cloud Byte, as documents in Quinn Emanuel's possession are in Cloud Byte's "control" for discovery purposes, and Dell has sought production of the documents through Cloud Byte accordingly. *See Cloud Byte LLC v. Dell Inc.*, No. 2:24-cv-00637-JRG (E.D. Tex.), Dkt. 59 at 4; *Duarte v. St. Paul Fire & Marine Ins. Co.*, No. EP-14-CV-305, 2015 WL 7709433, at *5 (W.D. Tex. Sept. 25, 2015) ("'[A] reasonable search of all sources' . . . includes 'plaintiff's attorney.'"). Cloud Byte and Quinn Emanuel, however, have ████████████████████████████ ████████████████████████████████████████████████████████. Cloud Byte has ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Cloud Byte, through its attorneys at Quinn Emanuel, has refused to produce the requested documents for months, despite Dell's numerous requests and a motion to compel. Quinn Emanuel thus cannot take the position that Dell must obtain documents in Quinn Emanuel's possession only via party discovery from Cloud Byte while simultaneously insisting that documents in its possession are not in Cloud Byte's control. *See Sanofi-Aventis*, 272 F.R.D. at 396 ("[Plaintiff] cannot have it both ways.").

### 3. ABA Rule 1.6 Does Not Prevent Production of These Documents

Although not in its written objections to Dell's document subpoena, Quinn Emanuel has since raised ABA Rule 1.6 as a basis to not produce any documents related to its representation of NEC. ABA Rule 1.6 states that, subject to certain exceptions,

"[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent." Not only does Quinn Emanuel refuse to produce documents, it cites ABA Rule 1.6 as a basis to refuse to admit whether it even possesses any of the requested documents. Quinn Emanuel's reliance on this rule is erroneous.

ABA Rule 1.6(b)(6) expressly allows production of confidential information of a client "to comply with other law or a court order." Numerous courts have held that the "court order" exception of ABA Rule 1.6 "encompasses duly issued subpoenas." *Smith v. Devine (In re BK Racing, LLC)*, Nos. 18-30241, 20-03014, 2023 WL 3331563, at *4 (Bankr. W.D.N.C. May 9, 2023) ("Rule 1.6 of the Rules of Professional Conduct is not a Valid Basis to Refuse to Produce Documents Requested Pursuant to a Subpoena"); *FTC v. Trudeau*, No. 03 C 3904, 2013 U.S. 2013 WL 842599, at *4 (N.D. Ill. Mar. 6, 2013) ("[A] subpoena issued under Rule 45 is a court order that compels compliance absent some other valid objection.").[4]

Even if Quinn Emanuel were correct (it is not) that a subpoena alone was not a "court order" exempting it from compliance with ABA Rule 1.6, Quinn Emanuel's distinction is academic because ABA Rule 1.6 does not excuse compliance with a court order enforcing a subpoena. *See SEC v. Covington & Burling, LLP*, No. 23-mc-00002, 2023 WL 4706125, at *3 n.2 (D.D.C. July 24, 2023). For that reason, courts universally recognize that ABA Rule 1.6 is not a basis to oppose a motion to compel. *See, e.g.*, *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 1:20-cv-00292, 2021 WL 602733, at *5 (M.D. Pa. Feb. 16, 2021) ("Rule 1.6 simply provides no basis upon which to deny the motion to compel or to grant the motions for a protective order or to quash the subpoenas." (citing *United States v. Servin*, 721 F. App'x 156, 160 (3d Cir. 2018))); *Hope for Fams. & Cmty. Serv. v. Warren*, No. 3:06-CV-1113, 2009 WL 174970, at *33 (M.D. Ala. Jan. 26, 2009) ("[A party] cannot use Rule 1.6 to oppose [a] motion seeking a court order directing disclosure of the specified documents . . . .");

---

[4] *See also Owens v. Republic of Sudan (In re Cooke Legal Grp., PLLC)*, 333 F.R.D. 291, 296 (D.D.C. 2019) ("Rule 1.6 therefore does not bar Cooke from complying with the instant subpoena, but instead specifically permits the firm to do so.").

*Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 942-43 (N.D. Tex. 2017) (rejecting argument that Texas version of Rule 1.6 provided basis to quash subpoena).

An order compelling Quinn Emanuel to produce relevant documents from its representation of NEC is appropriate here. NEC is not merely a bystander caught in the crossfire of an unrelated dispute. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ Furthermore, the protective order in place would restrict access to any NEC confidential information received from Quinn Emanuel, thereby alleviating any concerns regarding disclosure of confidential information. The Court should therefore order that Quinn Emanuel produce any agreements between and among Cloud Byte, IP Wave, and NEC that are in its possession, regardless of whether Quinn Emanuel is in possession of those documents by virtue of its prior (related) representation of NEC. *Axon Enter. Inc. v. Venjuris PC*, No. 6:22-MC-36, 2023 WL 1796436, at *3 (M.D. Fla. Feb. 7, 2023) ("[A]ny concerns . . . with complying with Ethical Rule 1.6 . . . will be resolved by the instructions in this order." (quoting *Chartis Specialty Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-13-00601, 2015 WL 13566919, at *2 n.2 (D. Ariz. Feb. 23, 2015))).[5]

**B.    Quinn Emanuel Must Produce License Agreements in Its Possession Relating to the Asserted Patents**

**1.    License Agreements Are Relevant to Damages, Marking, and Standing**

Quinn Emanuel should be compelled to produce prior licenses to the asserted patents granted by NEC or IP Wave, which are highly relevant to damages and other defenses. For example, these licenses would be relevant for calculating a reasonable

---

[5] ABA Rule 1.6 also allows disclosure with the "informed consent" of the client. Here, however, Quinn Emanuel did not even attempt to contact NEC for its consent to comply with the subpoena until Dell asked, several weeks after Quinn Emanuel had received it. And, to this day, Quinn Emanuel still has not provided NEC's position on the disclosure of documents relating to the asserted patents. This delay confirms that Quinn Emanuel and Cloud Byte are using ABA Rule 1.6 as a delay tactic, not due to genuine concerns regarding client confidentiality.

royalty, including by showing established rates for licensing. They are relevant to determining whether any prior assignee with a duty to mark failed to do so, thus eliminating presuit damages. Additionally, by identifying third parties with rights to the asserted patents, it allows Dell to investigate whether there are any licensing or exhaustion defenses.

Quinn Emanuel cannot seriously dispute the relevant of these licensing agreements, and it raised only boilerplate objections to relevance in its responses and objections to the subpoena. Ex. 9.

### 2. Cloud Byte's Alleged Ignorance Necessitates Production from Quinn Emanuel

NEC, the original owner of the asserted patents, ██████████████████████ ████████████████████████████████. But Cloud Byte ████████████████████████████████████████. Public documents show that NEC was of member of mutual license consortiums, including the Open Invention Network and the Open Networking Foundation.[6] ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ despite Dell's motion to compel, and despite Quinn Emanuel's assertion that NEC, IP Wave, and Quinn Emanuel share a "common interest" in the litigation.

Cloud Byte's refusal to produce these documents has necessitated their production from Quinn Emanuel to the extent they are in Quinn Emanuel's possession. Quinn Emanuel cannot reasonably contend that license agreements between NEC or IP Wave and a third party would be privileged, and, as discussed in Section III.A.3, ABA Rule 1.6 provides no basis for denying Dell's motion.

---

[6] *See* https://www.nec.com/en/global/techrep/journal/g08/n01/pdf/0801news.pdf; https://openinventionnetwork.com/joining-oin/join-now/license-agreement/; https://opennetworking.org/member-listing/current-members/; https://opennetworking.org/wp-content/uploads/2017/07/ONF-IPR-Policy-2016.pdf.

1  **C.    Quinn Emanuel Must Produce Communications in Its Possession Between or**

2  **Among Cloud Byte, IP Wave, and NEC**

3       Quinn Emanuel should also produce communications in its possession between

4  NEC or IP Wave and Quinn Emanuel attorneys for Cloud Byte, as these communications

5  are relevant for standing, patent valuation, damages, and defenses.  Quinn Emanuel's

6  assertion that attorney-client privilege prevents it from having to produce or identify

7  these documents is without merit because (1) Quinn Emanuel has failed to allege any

8  facts supporting privilege, (2) any privilege under the common interest doctrine is

9  contradicted Cloud Byte's assertions that NEC and IP Wave are arms-length third

10  parties, and (3) even if the facts did support privilege, Quinn Emanuel and Cloud Byte

11  have waived privilege through their unjustifiable and prejudicial failure to provide a

12  privilege log or admit whether these communications exist.

13       **1.    Communications Are Relevant to Damages, Marking, and Standing**

14       Communications between Cloud Byte, IP Wave, and NEC regarding the asserted

15  patents are clearly relevant to the case.

16

17

18

19

20

21

22

23

24       **2.    Cloud Byte Has Failed to Produce Communications Made by Its**

25       **Attorneys on Its Behalf**

26

27

28

███████████████████████████████████

### 3.    Communications with NEC or IP Wave Are Not Privileged, and Any Privilege Would Have Been Waived

Quinn Emanuel asserts that these communications would be "almost entirely" privileged.  This is incorrect.  Dell has assured Cloud Byte it is not seeking privileged communications between Cloud Byte and Quinn Emanuel.  Decl. ¶ 12.  Instead, Dell is seeking documents and communications between Cloud Byte—including Quinn Emanuel attorneys acting on behalf of Cloud Byte—and IP Wave or NEC.  According to Cloud Byte's own arguments, these documents could not be privileged, as Cloud Byte ███████████████████████████████████████████████████████████████.  Nonetheless, Dell repeatedly asked Cloud Byte to produce a privilege log so Dell could have the facts necessary to assess and challenge, if necessary, any privilege claims.  Cloud Byte has refused.

In its subpoena to Quinn Emanuel, Dell continued to ask Quinn Emanuel to assert any privilege claims through the production of a privilege log as required by the Federal Rules and granted Quinn Emanuel an extension of time to create such a log.  Quinn Emanuel refused and produced its objections without a privilege log.  In the parties' meet and confer, Dell again asked Quinn Emanuel to produce the log within a reasonable time or explain its basis for the delay.  *See* Ex. 8.  Quinn Emanuel did neither.

In its motion to quash the subpoena *ad testificandum*, Quinn Emanuel points to the common interest doctrine to argue that documents and communications disclosed to

IP Wave or NEC could still be privileged.  Motion to Quash at 16–17, *In re Subpoena to Quinn Emanuel Urquhart & Sullivan, LLP*, Misc. Case No. 3:25-mc-80048 (N.D. Cal. Feb. 26, 2025).  But the common interest doctrine only applies in narrow circumstances where the communications were "made to attorneys for co-parties to further a joint or common interest."  *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711-12 (5th Cir. 2001) (quoting *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993)).  Not only has Quinn Emanuel failed to meet its burden to prove that IP Wave and NEC have a common interest with Cloud Byte, Quinn Emanuel also fails to even allege *any* facts that would support finding the common interest exception applies. Quinn Emanuel notes the common interest could apply "if IP Wave or NEC maintained some interest" in the litigation, but it does not actually state whether or not IP Wave and NEC do have an interest in the litigation.  Motion to Quash at 17, *In re Subpoena to Quinn Emanuel* (Misc. Case No. 3:25-mc-80048).

Merely alleging that documents *could* be privileged if certain facts were to exist is plainly insufficient to meet Quinn Emanuel's burden of specifically demonstrating facts that support privilege.  *See Thompson*, 2025 WL 299971, at *3 ("Defendants cannot raise a blanket assertion of the privilege on the one hand and release themselves of the burden demonstrating that the privilege exists on the other.").  Cloud Byte and Quinn Emanuel's continued failure to produce a log or even identify any documents is inexcusable and unjustifiable.  This delay has greatly prejudiced Dell because the facts Quinn Emanuel is (hypothetically) relying on to support privilege—regarding NEC and IP Wave's interest in the suit—are the same facts Dell needs to assert its standing defense and join IP Wave and NEC to the suit.  Thus, any claim of privilege Cloud Byte could assert over the documents has been waived.  *See BDO USA*, 876 F.3d at 697.

Even if not waived, the communications with NEC and IP Wave are not privileged.  Cloud Byte and Quinn Emanuel "cannot have it both ways." *Sanofi-Aventis*, 272 F.R.D. at 396.  Either NEC and IP Wave have an interest in the case, in which case Cloud Byte must drop its arguments that it cannot obtain documents in those parties'

possession, or NEC and IP Wave are arms-length third parties, in which case there is no common interest exception. Quinn Emanuel's attempts to use privilege as both a sword and a shield by selectively using NEC's interest in the patents to advance its arguments while preventing Dell from obtaining any information about that interest defies "common sense and traditional notions of justice." *See id.* (chastising plaintiff for "assert[ing] privilege over communications held with Lek scientists" while simultaneously arguing that "Lek is an entirely distinct legal entity for purposes of Rule 30(b)(6)").

## D.    Quinn Emanuel Must Produce Its Communications with Third Parties Relating to Cloud Byte, IP Wave, and/or NEC

Dell also seeks communications between third parties, on the one hand, and NEC, IP Wave, Cloud Byte, and/or Quinn Emanuel, on the other hand, that are in Quinn Emanuel's possession. These communications may reveal efforts to license the asserted patents, which are directly relevant to issues of damages and valuation. They may establish what preexisting agreements NEC has with third parties, which is highly relevant for licensing and marking defenses, valuation, and damages. Cloud Byte has refused to produce these documents and has asserted they are not in its control. Thus, Quinn Emanuel should produce any of these documents which are in its possession, as they are plainly relevant, unobtainable from Cloud Byte, and there is no basis for asserting privilege over documents communicated to parties other than NEC, IP Wave, or Cloud Byte.

## VII. CONCLUSION

Dell therefore respectfully requests that the Court compel Quinn Emanuel to comply with the subpoena *duces tecum* and produce responsive documents.

Dated:  March 13, 2025

**GIBSON, DUNN & CRUTCHER LLP**

BY: _/s/ Josh Krevitt_
    Josh Krevitt

JOSH KREVITT (SBN 208552)
    jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:   212.351.4035

Attorney for Dell Inc. and
Dell Technologies Inc.